Tilghman C. J.
By our act of assembly, (19th April, 1794,) all creditors of an equal nature, are entitled to an equal share of the intestate’s estate, in case of a deficiency of assets. If then the joint creditors are to be excluded from an equal share of John Waddington’s separate estate, it must be, either because the partnership debts are not considered in law, as being due from John Waddington, or because from the nature of partnerships, an equity arises to the separate creditors, to be first paid from the separate estate. I will consider the case under each of these aspects. As to the nature of a debt due from a partnership, it cannot be doubted that whatever may be the rights, legal or equitable, of the *86 partners between themselves, the creditor has a legal remedy against each partner, for the whole debt. If he obtains a judgment against both, he may levy his execution upon the joint ProPerty> or uPon the separate property, of both, or either; or he may take the bodies of both, or either, in execution. So likewise, a separate creditor, having obtain-judgment against one of the partners, may lay his execution either on the separate property of his debtor, or on share of the partnership property, (subject, however, in the last case to the equitable rights of the other partner.) If Waddington were now living,'and a partnership creditor had obtained judgment against him, there is no question but he might levy his whole debt on his separate estate. Let us' consider then, whether the deáth of the partners makes any,' and what;-difference. On the death of one partner, the joint property is vested in the survivor, not absolutely, but subject to the rights of the deceased, according to his share in the stock. The remedy, as to the recovery of the debts due to the partners survives, but not the property. The survivor, who recovers, must account to the executors of his deceased partner, for his share. Salk. 444. Martin v. Crump. But in the case'submitted to us, both partners are dead. That can make no difference as to' rights of the representatives of each. From the nature of partnerships, certain equities subsist between the partners, which will be enforced in chancery, and which our courts of law are bound to enforce; and hence arises the difficulty of the present case. It is contended, oh the part of the plaintiffs, that by the rules of equity, the joint creditors are to be paid first from the joint estate, and only the surplus goes to the separate creditors ; and vice versa ■ as to the separate creditors, and separate estate. On the other hand it is insisted on, by the counsel for the defendants, that this is riot a general rule in equity, but only in cases of bankruptcy, and founded on the statutes of bankruptcy. On this point, the cause turns. If it be a general rule in equity, we are bound by it; but if only a rule in cases of bankruptsj we are to regard it no farther than as it appears to us to be founded on equity. It is very remarkable, that although this be the undoubted rule in cases of bankrupts, yet no one can tell how it came to be so, nor is it approved by the present chancellor of England, (Lord Eldon,) who submits to it, only because he found it esta *87 Wished by his predecessor. It appears also, that it has undergone several fluctuations ; for Lord Thurlow, certainly a man of strong mind, refused to acquiesce in it. I believe the rule was established by Lord Hardwicke ; and the history of it, since his time, may be found in the following opinion of Lord Eldon, in the case ex parte Kensington, &c. 14 Fes. 448. “ Lord Thurlow thought the joint creditors were entitled to prove, on a separate commission, because, though the contract was joint, the execution was separate, Lord Rosslyn, when he first came to this Court, preferred that rule, which he had often agitated at the barj but his lordship afterwards established the rule ex parte Elton. When I succeeded Lord Rosslyn I declared, that though the principle of - that rule, (ex parte Elton,) appeared to me to be doubtful, the rule was settled and ought not to be shaken.” And in Barker v. Goodair, 11 Ves. 786, Lord Eldon thus expresses himself, — “ The joint property is applied to pay all joint creditors, equally, as far as it goes, and the surplus, if any, to be applied under all the equities subsisting between the partners themselves. This is done here every day, though how it originally became law, I do not know. We have in some degree pursued it in the administration of assets, though very tenderly P These last expressions are important, as they shew, that to this day, the rule never has been applied in chancery, as a general prin ciple in the administration of assets. In Bolton v. Butler, 1 Bos. & Pull. 547, 8, Ld. C. J. Eyre calls it “ a rule of convenience, which has been adopted in bankruptcy, under the chancellor’s power by statute, to take order for the distribution of the effects of a bankrupt.” Lord Rosslyn does indeed say, in ex parte Elton, 3 Fes. jun. 238, that he has always understood this rule, as being founded upon general equity, but in this opinion he appears to be singular. It is not easy to discover the equity of excluding a creditov of the partnership from all share of the separate estates of the partners, until the separate debts are paid, nor of excluding a separate creditor from all share of his debtor’s joint property, until the joint debts are paid, because the truth is, that persons who trust the partners, either in their separate or partnership character, generally do it, on the credit $f their whole estates, both joint and separate. When men enter into partnership, they often borrow money on their *88 private accounts, for the very purpose of creating pavtnership stock; and this they may continue to do during the partnership. And on the other hand, the individuals of a partnership often withdraw money from the joint stock, and convert it to separate property in such a manner that it cannot be traced or identified. In such cases, it is evident that ^ ru^e bankruptcy works cruel injustice. I can perceive, however, that there is a convenience in this rule, because by ...... .. . r , letting m the joint creditors to receive payment from the joint stock, and the separate creditors to receive payment from the separate stock, the estates of bankrupts may be disposed of among the creditors without the trouble of settling an intricate account, between the partners. Ch. J. Eyre was right, therefore, in calling it a rule of convenience. But the convenience of the thing will not justify this Court, in annulling the provision of our act of assembly, which directs an equal distribution of the effects of deceased persons among creditors of equal nature. There is, nevertheless, an equity between partners, arising from the nature of partnership, which we are bound to regard; and which will have some operation on the case before us. When Gookson died, although the joint property went into the hands of Wadding-ton, yet as to a moiety, it was the property of Cookson’s executors. Waddington was responsible for all the partnership debts, and therefore might apply the joint property, as far as was necessary to their discharge. And when he did, the joint property which came to the hands of his administrator, (the defendant,) remained in the same condition. The equity between partners is this: that neither has a right to draw any thing from the joint stock, and apply it to his private purposes, until the debts are paid. And this equity is not destroyed by the death of either partner. It would be monstrous, if the surviving partner, or his executors after his death, could apply the whole partnership property to the payment of his separate debts, in consequence of which the partnership debts would fall on the private estate of him who died first. Where the joint property falls into the hands of the executor of the surviving partner, chancery, on a bill filed by the representatives of him who died first, would Order the joint property to be applied to the joint debts, n8t~~ upon account of any equity which the joint creditors had in that fund, but because it would be necessary, in order to do *89 equity between the partners. Lord Eldon expressed his. opinion to this-effect, in ex parte Williams, 11 Ves. 5, 6, and I am. satisfied, that he was right. “ What was partnership property before, says he, shall remain so, for the purpose of a distribution, not as the rights of the creditors, but as the rights of the partners themselves require ; and it is through the operation of administering the equities, as between the partners themselves^ that the creditors have that opportu- . . , r , , . • i . „ . v mty ; as, in the case ox death, it is the equity .of the deceased partner that enables the creditors to bring forward the-distribution.” Now then, the equity of Cookson requires, that the joint property should be applied to the discharge of the joint debts; but hence arises an equity to the separate creditors; for, to permit the joint creditors first to exhaust the joint stock, and then come in for an equal dividend of the separate estate, with the separate creditors, would be unjust, and a violation of the principle of bur act of assembly which requires an equal distribution among creditors, whose debt? ate of an equal nature, as all are in the present case, for all are simple contract debts. What then will place all these creditors on an equal footing ? We must first see, what the joint creditors have taken from the estate of Waddington. As the facts are stated in this case, it must be taken for granted, that the joint property in the hands of the defendant belonged equally to the estates of Cookson and of Waddington ; consequently, when all the joint property has been applied to the payment of the joint debts, the partnership creditors will have, in fact, received the amount of one-half the joint property from the estate of Cookson, and one-half from the estate of Waddington. I suppose, for example, that they have received twenty cents in the dollar j then ten cents in the dollar have been paid from the estate of Waddington, and to administer equity to his separate creditors, it will be proper that the plaintiffs, (the only separate creditors known to the Court,) should first receive ten cents in the dollar from the separate estate, after which each of the joint creditors, and the plaintiffs are to divide the balance of the separate estate among them, equally, pro rata, according to the balance of their debts respectively. This puts all the creditors of Waddington on an equal footing, so far as concerns his estate, and is in exact conformity to our act of assembly, the whole estate of Waddington, that is to say, hjs. *90 whole separate property, and his whole interest in the joint property being divided among all his creditors of equal degree, equally, pro rata. As to the portion which the joint creditors receive from that part of the joint property belongjng t0 Cookson’s estate, the separate creditors have no reason to complain of it, because they trusted Waddington only; but t'ie j0*nt creditors trusted both Waddington and Cookson. It -vvill be remembered, that I have assumed it as a fact in this . . case, that the joint property m the hands of the defendants belonged equally to the estate of each partner. No rule therefore, is intended to be laid down, which may affect cases differently circumstanced. Where the equity between the partners is different, it may perhaps occasion a difference of equity between the creditors. But I give no opinion out of the case before us.
Gibson J.
In bankruptcy the rule, that the joint and separate estates shall be marshalled in favour of the respective creditors, is undoubted : but I have found no decision on the subject of its applicability, in England, and but one in this country, to cases of insolvency. It is indeed said by Mr. Watson in his Treatise on the Law of Partnership, p. 370, that there is a different rule as to insolvency; but Burn v. Burn, (3 Ves. jun. 573,) which he cites, most clearly contains no such distinction. That was the .case of a bond joint on its face and executed by one partner, in the name of the firm, to secure a partnership debt; and it was held it should be considered joint and several against the separate creditors, and the obligee let in for a separate specialty debt, the evidence that the parties intended to be severally bound, being clear. All the Court did, therefore, in that case, was to correct a mistake, by putting the parties in the situation they would have been in, if no accident had happened: and it is very clear that a partnership creditor, by a joint and several bond, may elect to come in as a separate creditor, although by doing so, he abandons his claim on the joint estate, till the other creditors are paid. Ex parte Banks, 1 Atk. 106. Burn v. Burn, was,that case: but the Court did not decide what the obligee’s rights would have been in the character of a joint creditor, they merely reformed the instrument according to the original intention of the parties, which is a very familiar proceeding in equity. In England I apprehend it is not decided, whether the rule be peculiar to *91 bankruptcy, or a general principle of equity applicable to all cases of marshalling assets between joint and separate creditors. In no case does its precise foundation appear. Lord Thurxow denied it altogether: Lord Rosslyn puts it on grounds partly of convenience, and partly of abstract equity ; and subsequent chancellors have sustained it, doubting its propriety. It certainly does not arise from any provision of the -statutes concerning bankruptcy ; for not one of them , . ... _ , . mentions partners m relation to this question. It could not have been originally founded in convenience, which never can excuse, much less justify a departure from justice, and the rights of the partnership creditors ought not to be affected by any consideration of embarrasment to third persons arising from their enforcement. The only inconvenience would be the postponement of settling the separate estate until the partnership accounts were taken and settled, and this might have been surmounted, or at least endured. The-rule therefore must be deemed, and I think, justly, an abstract principle of equity, operating in all cases where chancery administers the assets of an insolvent partner. There is nothing in the nature of the commission itself to create a difference; for though it is sometimes called a statute execution, it is in fact nothing more than the means and instrument of equity, and does not constitute nor can it alter the abstract propriety of any rule of distributing among creditors the remnant of their own property. At law, or even in equity,where there is no insolvency, a joint creditor may go directly against the separate estate of a deceased partner, and it is by viewing the commission as analogous, and a means of enforcing a right against the partner, without at the same time considering the proceedings under it,. as a process of distribution among the creditors that doubt with respect to the solidity of the rule in question.is generated. The ground of Lord Thurlow’s opinion was, that although the contract was joint, yet execution being- several might be had against the separate estate, and by preserving the analogy between an execution and a commission, the joint creditors might come in. If, in despite of this technical notion, the rule still holds in bankruptcy, a fortiori, it ought, where all is distributor without the most remote analogy to an execution. But it appears to me, the rule is founded in the most substantial justice. Why should any class of creditors in preference to the rest, be exclusively entitled to the joint fund,- *92 and concurrently entitled to the separate estate ? Equality is equity ; and the joint creditors have already an immense advantage over the separate creditors in being exclusively entitled to the partnership fund: it is the largest; for men in trade usually embark their all in it, and seldom have much separate property. And, independent of distributive rights, the joint creditors have a degree of security for their debts, and facilities in recovering them, which the separate creditors, have not: they can sell both joint and separate estate on an execution, while the separate creditor can sell only the separate estate, and the interest in the concern that may remain to the partner, after the accounts of the debts and effects of the partnership are taken, as between the partners and their creditors, and as between the partners themselves. This exclusive liability of the partnership estate to the joint creditors is founded on no equity peculiar to themselves, but results from the nature of the contract of partnership which requires the joint debts to be paid before the equity can be settled betweeen the partners, each being individually liable till all is paid. Concede the present question to the joint creditors, and you give them in effect, a monopply of the insolvents-whole estate. What merit do they possess that the separate creditors may not lay claim to ? In the usual course of transactions, each class indiscriminately trusts to the whole estate, both joint and separate, Judge Cooper, in his Treatise on the Bankrupt Laxo, page 300, arguing with his usual force and ingenuity against the equity of the rule in bankruptcy, founds himself on the assumption that the joint creditors are the exclusive contributors to the mass of the joint estate, and-therefore, that the remnant of it is peculiarly their property ; and that both joint and separate creditors contribute to the separate estate, although in an unequal degree, the debts due the separate creditor being mostly contracted for articles of Consumption; and that while the partnership debts have a tendency to increase the whole mass of the estate, the separate debts tend to decrease it. All these assertions, as, general propositions, are unfounded. As to the first, an insolvent joint fund consists of the remnant of what was originally taken from the individual estates of all the partners, and, by the very act of turning it into stock, put beyond the immediate reach of those who were their separate creditors at the time: and as to - the second, where the concern has been a losing one, there is no great reason -to presume the profits of *93 the business added much to the separate property. The stock can increase the latter, only by being improperly withdrawn from trade for that purpose; and as the other partners have a direct interest in preventing such a measure, it is unreasonable to believe that any thing like a majority of cases of failure of the joint fund can fairly be attributed to that cause.- It is no more universally true, that every partnership'debt brings as much property into the - joint fund as , r , , , it takes out, than that each separate debt adds its own amount' to the aggregate of the separate estate. In either ;case, the purchase of articles of consumption excepted, the matter depends entirely upon whether the speculation were a good or a bad one. As to articles of consumption, which is the only class that-does not add to the bulk of the separate estate,- if they are purchased on credit, nothing is thereby drawn from the joint fund, and if paid for at the time, they form no part of the debts that enter into competition with the joint creditors, although the payment of their price may have lessened the separate estate pro tanto. Indeed the same remark is applicable to all articles purchased on separate account, whether for consumption or not: these, though they may in some instances lessen the separate estate, their own appropriate fund, yet cannot, in the usual course, diminish the fund of the joint creditors, which alone could give them an equitable right to come on a fund thus increased at their expense. The claim of each class is, therefore, equally meritorious, both as to the motives for giving credit,'and as to creating or increasing the respective funds, out of which each is to be satisfied; if then the policy of trade requires that the joint fund shall be appropriated,in thefirst instance, to paymentof the joint debts, justice, equity, and conscience, on the other hand, without interfering with that policy, demand that the separate creditors should, at least, have the miserable advantage of the same priority as regards the separate estate. It is unconscionable, that one class should have the exclusive benefit of one fund, and come in concurrently on the other, when both equally trusted to all the insolvent’s estate, whether joint or separate, and when' there is no reason peculiarly .applicable to either, to presume the credit-given by the one, had a tendency to create or increase the fund appropriated.to the other. In Woddrop v. Ward executor of Price, 3 Desaus. Cha. Rep. 203, where every thing peculiar to bankruptcy was out *94 of the question, the rule was adopted in a case which cannot be distinguished, in principle, from the present.
The rule just proposed by the Chief Justice, is certainly more consonant with equity, than that which would let in thé joint creditors without any restriction or limitation whatever; but I object to it, because it wants reciprocity. Suppose the creditors to have gottwenty-five percent, from the separate estate: will they be permitted to come on the ioint es-4 >tf í *j tate pari passu with tlie joint creditors, after the latter have drawn from it in the same proportion? It is evident therefore the rule would operate unequally, by making the separate creditors share their fund with the joint creditors, where it happens to be the largest, without subjecting the- latter to share theirs under the like circumstances. It may be said, it is impossible to put them on a footing in this respect, I grant it cannot be done on any plan of participating in the same fund: but you precisely put them on a footing by making each fund bear the burthen of its own debts ; and if that of the separate creditors should happen to be the most productive, I know not on what principle of equity they can be deprived of the advantage.
But it is said, the rule is controuled by our statute of distribution, which settles the priority of the different grades of debts, without making any distinction between the different classes of creditors whose debts are of the same grade, and that of course all debts of the same grade must come' in on an equality. If that be so, it is an effect the legislature never intended to produce. They had nothing more in view than the administration of a single fund among its own peculiar creditors. The first was a matter easily subjected to a set of simple rules ; but the second could not be touched by a hand so violent, without throwing the whole into inextricable confusion, and destroying all justice and equitable distinction. Here are two funds in the hands of the representative of an intestate who held them in distinct characters. As a surviving partner he was not, even at law, the owner of the partnership property in possession; and although as to choses in action the remedy survived to him, still to a: share of these also, the representative of his deceased partner was entitled,' so soon as they were reduced to possession. The rule allowing a set-off by a surviving partner of a partnership demand against a separate debt, and vice versa, which ap *95 pears in contradiction to this doctrine, arises from technical principles of joinder of different matters in the same declaration; and is an anomaly in the law. If, on the death of -a surviving partner, the partnership fund is to be blended with his private estate, it must be so in every instance, and to every purpose, as well in favour of, as against the separate creditors. Then, m case the separate estate were insolvent, the separate creditors would come in to the prejudice, not only of joint creditors, but of the representatives and creditors of the deceased partners, also, who would be burthnned with the surviving partner’s debts in every case of a deficiency. It is impossible to say the two funds shall be blended, when it is the interest of the joint creditors to have them so, and kept separate when circumstances render it otherwise. The argument is founded on the notion, that the surviving partner becomes, the entire owner of the partnership fund and effects, and is only personnally responsible to the joint creditors, and representatives of his deceased partners; which is wholly fallacious: for if he be like to waste the stock, chancery will restrain him from disposing of it, or receiving the outstanding debts. Hartz v. Schreder, 8 Ves. jun. 317. The legislature never could intend to subject the property of a surviving partner, whether owned in his own right, or in a representative capacity, to the same process in a course of administration: nor could it be intended that the death of a partner should effect, a total change in the rights of all parties, whether partners pr creditors. I am therefore of opinion that each estate is liable to its own debts in the first instance, and to the. creditors of the other, for the surplus, if there be any.
Duncan J.
.This case has been very fully and ably-discussed. It involves a principle of extreme importance, as to the order of payment of debts of persons deceased. Whatever may be the inconvenience and injustice of the prescribed order, it is beyond the power of this Court to modify it. It is matter of positive law, and-not of equitable discretion ; and. the question submitted to the Court must depend, on the act of 19th April, 1794 ; the order and priority of payment cannot be departed from on/any assumed principle of equality. Natural justice would seem to require, when the creditor has not, in the life-time of the debtor, obtained a lien, *96 that all debts bn a deficiency of assets should be paid pro rata. In reason, there is no difference between a promissory ~instrument, whether it has a seal, or is without one; between simple contract, and specialty debts; yet not so is the provision of the law. The order of payment is unequal, and intended to be so. It leaves nothing to the order and discreof the Court- The Court has no power, as it has in the case of equitable assets, or in bankruptcy, to make an ,. . . . equal distribution or equitable disposition ol the assets. The statute has ordered; the law has spoken.
The remedy of the joint creditors is a legal one ; the assets are legal: for on the death of one partner, the action is against the survivor, and the plaintiff may declare not only for a debt contracted in the life-time of the deceased partner, but for a debt due by the survivor in his own right. 2 Salk. 444. 1 Comyn. Cont. 327. Comb. 382. 2 T. R. 47. So that as to the survivor and his representatives, it is considered as the proper debt of the survivor. A debt due by a surviving partner may be set off against a demand by him in his own right. 5 T. R. 493. And in Richards v. Heather, 1 Barn. & Ald. 33, it is held, that the plaintiff may maintain his action as well for a demand for which the defendant was liable individually, as for that for which he was liable jointly with the other party who is dead; and the law is thus broadly laid down, “ that according to every principle of law, the joint debt may, by reason of the death of the party, be now treated as if it had been originally a separate debt; for by the law of England, where several persons make a joint contract, each is liable for the whole, although the contract be joint.” A court of chancery no more than a court of law, can disturb the order of payment when the assets are legal. In England, and in Pennsylvania, until the act of 19th April, 1794, the executor or administrator could prefer one creditor to another, when the debts were of equal degree. So they may retain for their own debts, nor can chancery restrain them or grant relief. Nor can chancery take away the priority of the creditors; but even will enforce a prior decree in equity against a subsequent judgment at law. Morrice v. Governor & Company of The Bank of England, Cas. temp. Talb. 217. 4 Bro. Parl.C. 217. Martin v. Martin, 1 Ves. 211. Equity always aims at equality of satisfaction; but marshalling of assets in that Court arises only where jurisdiction attaches by equitable *97 assets ; as where one devises all his real estate to pay all his debt's; and the bond creditors receive part of the debt out of the personal estate; the simple contract creditors shall be paid equally with the bond creditors, out of the real estate ; and the bond creditors shall have nothing thereout until the simple contract creditors shall have received as much from the same, as shall make them equal with the bond creditors, Hazlewood v. Pope, 3 P. Wins. 323; or where a plaintiff creditor domes into a court of chancery to reach the assets, there the Court will do equal justice to all creditors, without any distinction as to priority. Plunket v. Penson, 2 Atk. 290. For in all these cases equity aims at equality of satisfaction in the administration of assets, and the distinction is a plain one. Where there are legal' assets, that is, assets at law, without the help of equity, the' executor must apply them according to the course of law, which allows and requires a preference in certain cases ; but where' they are only equitable assets, assets which are not liable without the help of a court of equity, in'such case, the Court will direct the application thereof according to the course which is most equitable and just, to pay every creditor his share in proportion. So where the assets are partly legal, and partly equitable, although equity cannot take away the legal preference, or legal assets, yet where one creditor has been partly paid out of such legal assets, the Court will postpone him until there is an equality of satisfaction, to all the other creditors,, out of the equitablé assets, proportionably to so much as the legal creditor has been paid out of the legal assets. 4 Burn’s Ecc. Law, 309. Talbot Cas. 220. 2 Vern. 285.
That a rule in bankruptcy, very'different either from the administration of legal or equitable assets has been established, such as is contended for by the plaintiff, is acknowledged. The rule is this: — the joint'estate is to discharge the joint debts in the first place, and the separate estate the separate debts, and that neither can invade the funds of the other, until the particular class is satisfied out of its appropriate fund. But this altogether rests on the provisions of the bankrupt law, a system very different from the administration of assets. The statute of 13 Eliz. c. 7, enacts, that the commissioners are to sell, or otherwise order the bankrupt’s estate, for the satisfaction and payment of the creditors, to every creditor a portion, rate and rate alike ; and by *98 5 Geo. II. c. 30. s. 33. it is enacted, that the commissioners, or a major part of them, shall order such part of the nett proceeds of the bankrupt’s estate as shall be in the hands of the ass^gneesi as they or a majority of them shall see fit, among such of the bankrupt’s creditors as shall have proved their debts in proportion to their several and respective debts. These acts of parliament and the equity of chancery incline, r x j j * that all persons shall have an equal satisfaction, and not one more than another. 1 Atk. 98. Ex parte Bond and Hill. But this, which is more a rule founded on convenience, than on abstract justice, is applicable to bankruptcy only, distinguished from all others emphatically under the denomination of the rule in bankruptcy. This rule has obtained, though opposed by very great names. Lord Thurlow rejected it. Lord Rosslyn, at first, adopted the opinion of Lord Thurlow, but afterwards established the rule. Ex parte Elton, 3 Ves. 238.; and Lord Eldon has acted upon it, though not with satisfaction to his own mind. For in Chiswell v. Gray, 9 Ves. 126, be observes, that it is extremely difficult to say on what the rule is founded, and in Barker v. Goodair, 11 Ves. 86, how it became so he does not know, and adds, we have in some degree pursued it in the administration of assets, but very tenderly, tie must have referred in this observation to equitable assets or to a creditor, forced into chancery, to reach the assets. And in ex parte Burns, 10 Ves. 107, in speaking of the election of a joint and several creditor, as to the fund to which he will resort for payment, he says, for some reason not very intelligible, the creditor is deprived of the caution he has used in making his debt joint and several; he could not see why a creditor, having both securities, shall not go against both estates, but it is settled, he must not. And in ex parte Kensington and Taylor, 14 Ves.449, he discovers still greater dissatisfaction with the rule, by observing, “ when I succeeded Lord Rosslyn I declared, that although the principle of the rule appeared to me to be doubtful, the rule was settled, and not to be shaken.” In ex parte Elton, 3 Ves. jun. 288, we have the foundation and extent of the rule. The rule, that each estate is to pay its own debts, is there said to have been too long settled, however, to be altered. The commission is no longer considered or treated as an execution at law ; for the effects taken under it are not disposed of as at law, but fall immediately *99 by the direction of the statutes under the order of chancery, which is to make an equitable distribution among the creditors, to administer all equitable claims upon the effects, and to divide this rateably. In M'Carty v. Emlen, 2 Yeates, 192, it is said, that the rule applies to bankruptcy and actual insolvency.
I will not discuss the equity of this rule, although it can not in all cases be the most equitable of all rules. For if the . partnership effects had come into the hands of Waddington, and he had disposed of them in his lifetime, on a dissolution of partnership by the retirement of one, followed by bankruptcy, the right of the joint creditors as to the property remaining in specie still subsists, unless there has been a distinct agreement between the partners on the dissolution, that it shall become separate. Yet where the possession of the property is delivered over to the surviving partner, and he goes into the world as a sole trader, he has' all the credit belonging to him as such sole trader, having the possession and dealing with mankind as such. In bankruptcy, the property would be considered as the separate property of the surviving partner. Ex parte Williams, 11 Ves. 5. Such would be the effect of the rule in this case, that the property of Cookson and Waddington coming into the sole possession of Waddington, after Cookson’s death, would be considered as the separate property of Waddington, and go exclusively to the separate creditors of Waddington. This rule as a principle of general equity, I cannot understand. It may be a rule of convenience, very convenient for those who profit by it; but very unjust for those who are stripped of their legal right. As a rule in bankruptcy, I do not touch it. It is established. I have nothing here to do with it. It has no relation to the administration of assets, which depends not on any such arbitrary rule, but is regulated by positive law. To me, I confess, it would appear strange to apply rules founded on statutes of bankruptcy, where we have no such system, to a case where there is no bankrupt.
It is true, that on a judgment against one partner, a separate creditor has no right against the joint property, further than the separate interest of the partner, viz. his share on a division of the surplus subject after payment of the debts. Therefore where joint property is taken in execution for a separate debt, such execution cannot prevail against the execution *100 of a joint creditor. But there is a wide difference between this case, and that of a judgment against both. For the whole debt might be had of one. Contribution lies among themselves. If a judgment had been obtained against Wad-* dington, by a joint creditor, as surviving partner, would not this come in, in a course of administration, before a simple contract debt ? Suppose a joint bond of C.ookson and Wadding-(on^ an(j no joint property, and no separate property after payment of separate simple contracts, would the debt be lost ? Suppose a joint and separate bond, is the creditor to be put to his election ? The debts here are all on simple contract; the sixth and last grade in the scale of payment, which, in the act of April, 1794,*are to be paid without regard to their quality ; but if the assets are not sufficient, they are to be averaged and paid pro rata.
The rights at law and under bankruptcy are very different. These rights are very lucidly distinguished and arranged in the opinion of Ch. J. Eyre, in Bolton v. Puller, 1 Bos. & Pull. 539. “ Bankruptcy, when it intervenes, very much changes the situation of parties. If all become bankrupts, all the joint and all the separate property will vest in the assignees, whether the commissions are joint or several. If a separate commission issues againt one partner, his assignees will take all his separate property, and all his interest in the joint property. If a joint commission issues against all, the assignees will take all the joint property, and all the separate property of each individual partner. In the distribution to creditors, a rule of convenience has been adopted. To understand it,' we should see what the rights of the creditors were ás to execution before bankruptcy. A separate creditor might, at his electiau, take the separate estate of his debtor, or his debtor’s share of the joint estate, or both, if necessary» A joint creditor might take the whole joint estate or the whole separate estate, of any one partner. But the rule of convenience which has been adopted, restrains the separate creditor from resorting in the first instance to his debtor’s share of the joint property; and also restrains the joint creditor from resorting in the first instance to the separate property of his debtor. Bankruptcy has been called a statute execution ; but if it has any analogy to an execution, it is certainly very much modified, and by the authority of the chancellor who is to take order for the distribution of *101 the effects of a bankrupt. Under the rule, the separate ereditors have a right to be satisfied out of the separate property, in preference to the joint creditors.” Thus we have the rule, the rule of convenience peculiar to bankrupts. The books are full of decisions as to the prevalence of this rule in bankruptcy. But it has never been adopted in the administration of assets. No decision, or dictum of any Judge, has so applied it. If it had, we should have found some recognition of the principle in former books of reports, or in some elementary treatise. The claim of the joint creditors to come in pro rata, and further they do not claim, appears to foe well founded, and judgment should be entered accordingly.
Judgment affirmed.