ABRAHAM DONER, SAMUEL HERR and SAMUEL HOW-
RY, *against* JOHN STAUFFER, CHRISTIAN BRECKBILL
and JACOB ESHELMAN.

IN ERROR.

In a case of partnership, the joint effects belong to the firm, and not to the partners, each of whom is entitled only to a share of what may remain, after the payment of the partnership debts, and no greater interest can be derived from a voluntary assignment of his share, or a sale of it on execution.

A preference exists in favour of the joint creditors of a firm, founded on no merits of their own, but on the equity which springs from the nature of the contract between the partners themselves.

With the single exception of a joint commission, whenever the partners are not individually involved, the joint creditors have no preference.

A separate execution creditor sells not the chattels of the partnership, but the interest of the partner encumbered with the joint debts; and the joint creditors have therefore no claim to the proceeds.

Where the separate creditors of each partner precede by execution, the sale of the partnership effects, under the execution of the separate creditor of one partner, passes the interest of that partner subject to the equity of his co-partner, and the execution creditor is entitled to the price. This equity, together with the remaining interest of the other part-ner passes by a sale under execution of *his* separate creditor, where the purchaser of the effects is the same: and this whether the sales be made consecutively, or at the same time.

*Query.*—What would be the effect where there are separate purchasers of the shares of the respective partners.

WRIT of error, to the court of Common Pleas of Lancaster county.

This was a feigned issue, directed by that court, and joined be-tween the defendants in error, who were the plaintiffs below, (and for whom the verdict past,) and the plaintiffs in error, who were the defendants below.

It appeared from the evidence in the cause, that *Daniel Howry* and *Benjamin B. Eshelman* entered into partnership in a manu-facturing establishment, under the firm of *Howry* and *Eshelman.* They became considerably indebted. Judgments were entered and executions were issued against each of them. *Abraham Doner, Samuel Herr, John Howry* and *Samuel Howry,* had severally judgments against *Daniel Howry,* on each of which an execution issued against him, and was levied on the 9th of August, 1825, on the personal pro-perty of *Daniel Howry* and *Benjamin B. Eshelman,* as partners in trade.

*John Stauffer, Christain Breckbill* and *Jacob Eshelman* had several-ly obtained judgments against *B. B. Eshelman,* on each of which judgments, an execution was issued against him and levied on the 11th day of August, 1825, on *Benjamin B. Eshelman's* share of the

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer, Christian Breckbill and Jacob Eshelman.)

personal property of *Benjamin B. Eshelman* and *Daniel Howry*, as partners in trade. By virtue of these and other executions, the personal property of the firm was sold for the sum of five thousand and seventy dollars and thirty-nine cents, which after payment of the costs, left a balance of four thousand seven hundred and seventy-nine dollars. This balance was paid into court for distribution.

On a rule obtained by the counsel of *Stauffer, Breckbill* and *Eshelman,* to shew cause why the one half of the proceeds of the sale of the firm property, should not be applied to the satisfaction of their executions against *B. B. Eshelman,* the court decided, that the execution creditors of *Benjamin B. Eshelman*, had a legal right to his share of, and interest in the partnership effects of the firm of *Howry. & Eshelman,* as it stood on the 11th August, 1825, when the executions were levied; and directed this issue, to try what that share or interest was.

The plaintiffs claimed a moiety or half part of the four thousand seven hundred and seventy-nine dollars, as their share.

The plaintiffs having closed their evidence: The defendants in support of the issue taken in the cause, offered to prove, that the firm of *Howry & Eshelman* was entirely insolvent on the 11th August, 1825. That the debts and claims against the said firm existing on the said 11th August, 1825, which were then unpaid, greatly exceeded the whole property of the said firm. That *Benjamin B. Eshelman,* on the said day, had no interest whatever in the said firm, and that *Daniel Howry,* the other partner, is greatly interested in the application of the funds of the said firm, to the payment of the debts of the said firm, as he is answerable, individually and as a partner, for the whole of the said debts. Which offer being objected to, the court overruled the same, and delivered the following opinion, to wit: "I am satisfied that the authorites cited settle the law as it applies to the cases decided, that is to say, to cases where there are separate executions against one partner levied on the partnership effects. But this is a case where the whole partnership effects are swept away by separate executions against each partner, where the creditors at large have no lien. I must say that the principal object in directing this issue was, as it was a case of great importance, to give an apportunity of completely considering and reviewing the law on the subject. But I am very clear that *Benjamin B. Eshelman's* interest, or want of interest, cannot be shown by evidence of debts due from the firm, and that the testimony offered relative to the insolvency of the firm, and the interest of *Daniel Howry* in the application of the funds of the firm to the payment of its debts, cannot be admitted."

To this opinion, overruling the evidence offered, the defendants excepted.

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer, Christian Breckbill and Jacob Eshelman.)

Although the issue joined was between the separate execution creditors of the respective partners, the counsel for the defence appeared for the joint creditors of the firm, to controvert the right of the separate creditors of *Eshelman,* to be paid out of the fund in court, before the joint creditors were satisfied: and they alleged, that after the executions of the separate creditors were levied, *Howry & Eshelman* had made an assignment to trustees, for the benefit of the creditors of the firm.

The only question now raised in this court, upon the charge of the court below, and the bill of exception, was, whether the separate execution creditors of *Eshelman,* had a right to be paid out of the proceeds of the sales of the goods of the firm, before the joint creditors were satisfied out of that fund.

*Norris,* for the joint creditors, denied that the separate execution creditors had a right to the fund in court, for appropriation. The separate creditor cannot withdraw the funds of the partnership, from the payment of the partnership debts to pay his debt. Accounts must be settled between the partners and the world, and one between the partners themselves, before such creditor can have the fruit of his execution; he comes in only for the surplus after paying the partnership debts.

Partners have a lien on the partnership effects, creditors have not. No spark of interest can be drawn from the firm, by one partner, until the partnership is settled. The partnership fund is pledged for the payment of the partnership debts. The only interest which each partner has, is what remains after the debts are paid; it is the dry mass of property, after the payment of the partnership debts.

This then being the interest vested in *Eshelman,* the plaintiffs below, the separate execution creditors, could take no greater interest, and therefore the joint creditors must be first paid. *West v. Skip,* 1 *Vesey,* 293. *Id.* 244.

The vendee, is a tenant in common with the surviving partner. *Fox v. Hanberg, Cowper,* 445. *Pearce v. Jackson,* 4 *Mass. Rep.* 242. *Taylor v. Fields,* 4 *Vesey, Jr.* 396. He also referred to, *In the matter of Smith,* 16 *John. R.* 102, and the note to that case, where, the cases on the subject of the proceeding under an execution, in favour of a separate creditor, levied on partnership effects are collected. *Nichol, et al, v. Munfort,* 4 *John. Ch. R.* 522. *Id.* 525. *Edy v. Davidson, Douglass,* 650, decides, that the sheriff should pay a part of the money levied on the execution of the separate creditor, out of the partnership effects, to the assignee, representing the partnership creditors equal to the amount of the interest of the partnership in those effects. This case is precisely in point. *Gow on Partnership,* 49. *Id.* 317. The right is a lien in favour of part-

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer, Christian Breckbill and Jacob Eshelman.)

ners, *Watson on Part.* 103. *Bank of North America* v. *M'Call*, 3 *Bin.* 338.

An action may be brought by a surviving and solvent partner, to recover money obtained by a separate creditor, out of partnership effects. *Bank of North America* v. *M'Call*, 4 *Bin.* 371. *Nox* v. *Summers*, 4 *Yeates*, 477. The general doctrine is recognized in this case, and here money was made on a separate execution against one partner, and brought into court, and claimed by the assignees of the partners, on a subsequent execution, and the court decreed the money to the assignee. He referred also to *M'Carty* v. *Emlen*, 2 *Yeates*, 190. Chancery will not stay the execution of the separate creditor, until the partnership debts are taken and liquidated. *Moody* v. *Payne*, 2 *John. Ch. R.* 548. *Kuhn* v. *Nixon*, 15 *Serg. & Rawle*, 118, 125. *Caldwell* v. *Stileman*, 1 *Rawle*, 212, 16.

The fund, is by law, appropriated to joint creditors, and the separate creditors must show that they are satisfied, before such separate creditors can come at it.

This preference of the joint creditors, as to the partnership effects, is the well settled law of Pennsylvania. The lien of the partner, upon these effects, which gives this preference, arises from the contract of partnership. They are mutually bound, on that contract, for the joint debts of the firm, and if the separate creditor of one partner, could sweep the partnership fund away, great injustice would result to the other partner. His liability to the joint creditors would remain, while the joint property, in which he had an equal interest, would be taken to satisfy the debt of his partner; in which he had no interest, and for which he was in no way liable. All this is prevented by the principle of natural justice, which gives the lien to the partner, and secures the effects to the joint creditors. This does not depend on the bankrupt law, nor is it derived from the system which in England has been adopted under it. That law is silent as to any preference. It arises from natural equity, growing out of the contract of partnership, and is said to exist at common law.

The sale in our case was *in invito*, against the consent of the owner of the goods. It is a transfer by operation of law. The sheriff must, under the separate execution, seize the partnership effects, for the partners are seized *per mi et per tout*, and the interest of each cannot be separated. *Watson*, 98, 72.

The courts of law in Pennsylvania, as we have here no courts of equity, are bound to enforce the equity arising in the relation of partnership between the partners. *Bell* v. *Newman*, 5 *Serg. & Rawle*, 78.

Where the land of an intestate is sold by execution, the money is to be distributed according to the order of payment of debts, in the case of personalty, and the court from which execution issued.

(Abraham Doner, Samuel Herr and Samuel Howry *v.* John Stauffer,
Christian Breckbill and Jacob Eshelman.)

is bound to distribute it. *Bank* v. *Stambaugh's Adm'rs*, 13 *Serg. &
Rawle*, 299.

In the case of *Edy* v. *Davidson*, the same equitable doctrine was
applied to the distribution of money, levied out of partnership
effects.

The mode adopted to exercise the equitable jurisdiction, in this
case, was a proper mode to effect the object. It is in effect be-
tween the partners, although nominally between the separate cre-
ditors of each partner. But it is a feigned issue, and no matter
who are nominally on the record, the substance is to try the right
between all parties.

The *mode* of these feigned issues is not the subject of error.
They are to inform the conscience of the court, and the substance
only is regarded. *Neff* v. *Barr* 14 *Serg. & Rawle*, 166.

It is not necessary that there should have been an execution in
favour of the joint creditors. Their right does not depend on this,
but on the lien in favour of the partners.

The court declined hearing *Parke* and *Montgomery*, for the de-
fendants in error.

*Hopkins* for the plaintiffs in error.

The money came into the court by wrong: the whole effects,
not merely the right to the surplus after the payment of the part-
nership debts were sold; although the sheriff could of right sell but
that surplus. *Hankey* v. *Garrett*, 1 *Vesey*, 242. *West* v. *Skip*, *Id.*
456. *Taylor* v. *Fields*, 4 *Vesey, Jr.* 396.

Enough must be left for partnership debts. When the sale took
place the partnership was gone. *Pierce* v. *Jackson*, 6 *Mass. Rep.*
242. *Cooper* v. *Chitty*, 1 *Bur. Rep.* 20. *Shaw* v. *Tunbridge*, 2 *W.
Black.* 1064.

Here the entire fund was brought into court for distribution
among all parties in interest.

A motion to distribute a fund, in Pennsylvania, is in the nature
of a bill in equity, and comes instead of the *audita querela*, which
has fallen into disuse. It expands itself to embrace all questions
involved, and all the parties in interest. The joint creditors had
a direct interest, represented by the assignees of an insolvent
partnership. Their interest, and that of *Daniel Howry*, is identi-
fied; and if these creditors so represented, do not recover this
fund, their rights must be destroyed. The fact that the assign-
ment was made subsequent to the execution, can have no effect.
The assets of the partnership are in *gramio legis*, until they can
assert their rights.

The issue directed *ex vi termini*, embraces the question as to the
joint creditors, as upon the settlement of the accounts of the firm
only, can the share of *Eshelman*, in the partnership fund be as-
certained.

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer, Christian Breckbill and Jacob Eshelman.)

What is the mode of investigation where the funds of a partnership are in court for distribution?

In chancery, where a court of chancery exists, an injunction would issue to stay proceedings at law, and distribution would be made in that court so as to do equity. Lord *Mansfield,* however, thought that where the common law court was in possession of the fund, a resort to a court of equity was unnecessary; but that the common law court should distribute it according to equity. Here our courts are armed with equitable as well as legal powers, and they have long ago broken legal trammels, and asserted principles necessary to do equity and justice. *Est boni judices ampliari jurisdictionem.* Edy v. Davidson, Douglass, 650. Bank v. Stambaugh's Adm. 13 Serg. & Rawle, 299. In this case the funds were brought into court upon execution, and the court, to do equity, investigated the rights of parties under the fourteenth section of our law relating to intestacy, and decreed in favour of a bond creditor, as to the fund so raised; although the bond creditor was no party to the execution, and had no judgment.

Where there are complicated rights, the court will, on the application of the sheriff, suspend proceedings until those rights can be ascertained, in order that the sheriff may make a correct return. *Shaw v. Tunbridge,* 2 *W. Black.* 1064. He referred also, to *Knox v. Sumers,* 4 *Yeates,* 477.

Where the separate creditor had actually obtained the fund under a judgment, yet he was not protected by it from the other partner. *Bank v. M'Call,* 3 *Bin.* 371.

Where the claim is either by assignment, or under execution, it is only to the surplus after the payment of partnership debts. *Nicoll v. Mumford,* 4 *John. Ch. R.* 525. This case contemplates bringing the money made on execution into court, and overrules, in effect, the decision in 2 *John. Ch. R.* 548, as to an injunction to stay a separate creditor, in case of partnership effects.

The case of *Morely v. Stromborn,* in 3 *Bos. & Pull.* 54, is at law. In equity it is different, and it is so said in this case; and Lord *Mansfield* held, that the rule should be the same at law.

The opinion of the court was delivered by

GIBSON, C. J.—It is settled by a train of decisions in the American, as well as the British courts, that the joint effects belong to the firm, and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts; and consequently, that no greater interest can be derived from a voluntary assignment of his share, or a sale of it on execution. That a contract which enables the parties to keep a class of their creditors at bay, and yet retain the *indicia* of ownership, should not have been deemed within the statutes of *Elizabeth,* is at

27

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer
Christian Breckbill and Jacob Eshelman.)

tributable exclusively to the disposition universally manifested by
courts of justice to encourage trade. But such as it is, has the
contract of partnership been established; and the principle which
enables the partners to pledge to each other, the joint effects as a
fund for payment of the joint debts, has introduced a preference in
favour of the joint creditors, founded on no merits of their own,
but on the equity which springs from the nature of the contract
between the partners themselves. The author of the *Commentaries
on American Law*, vol. 3, page 38, attributes this preference to an
inherent equity in the joint creditors themselves, arising from a
supposed acquisition of the partnership effects from their means.
The opinions of *Chancellor Kent*, are so justly entitled to deference,
that no prudent judge will differ from him without hesitation; yet
I cannot but adhere to the opinion I expressed in *Bell* v. *Newman*,
5 *Serg. & Rawle*, 92, that in cases of insolvency or bankruptcy, in
which alone the question of priority can be material, the joint
effects consist of the wreck of the capital originally embarked.
Under a joint commission, by which the effects pass to the assignees,
while the partners are personally discharged, I admit, that the
preference of the joint creditors has no other foundation, if it has
any at all, than this supposed inherent equity; and the best ele-
mentary writer on the subject so disposes of the difficulty. *Gow on
Partnership*, 341–2. But in the case of a separate commission,
*Lord Eldon* expressly puts it on the particular equity of the part-
ners themselves; *Ex parte Ruffin*, 6 *Vesey*, 126, and in the case of
an execution, *Chief Baron M'Donald* does the same. *Taylor* v.
*Fields*, 4 *Vesey*, 396. To secure the firm from the extravagance of
its members, by preventing the capital from being withdrawn
from the purposes of the partnership, the stock is pledged for the
burthen which, from the nature of the connexion, is to be borne by
all; but in moulding the law of partnership to its present form,
the credit gained by giving the joint creditors a preference, was, if
an object at all, a very remote one. Accordingly, with the single
exception of a joint commission, we find that wherever the part-
ners are not individually involved, the joint creditors have no pre-
ference whatever: as in the instance of a *bona fide* assignment of
the effects, to one of the partners, after the partnership has been
dissolved.

In consequence of the rule as I have stated it, a separate execu-
tion creditor sells, not the chattels of the partnership, but the
interest of the partner, encumbered with the joint debts; and the
joint creditors therefore have no claim to the proceeds. To allow
them the proceeds, and recourse to the property in the hands of the
purchaser, would subject it to a double satisfaction. Neither can
they take the proceeds or the property at their election. They
can interfere at all, only on the ground of a preference which has

(Abraham Doner, Samuel Herr and Samuel Howry, *v.* John Stauffer, Christian Breckbill and Jacob Eshelman.)

regard only to the partnership effects, and these have not been sold but only the subordinate interest of the partner, which was, strictly speaking, his separate estate.   Their recourse, therefore, is necessarily to the property in the hands of the purchaser.   Now had the sheriff sold the interest of but one of the partners, the execution-creditor would have clearly been entitled to the proceeds.   But although he sold the whole stock at one operation, on separate executions against both, there was, in contemplation of law, a separate sale of the interest of each.   What then would have been the effect, had these sales been made consecutively? The first, in the order of time, would have passed the interest of the partner, subject to the equity of his co-partner, and the execution creditor would have been entitled to the price.   But this equity, together with the remaining interest of the other partner, would have passed by the succeeding sale to the same purchaser; the execution creditor, in that instance, also taking the proceeds. Can it make a difference, then, that instead of being consecutive, these two sales were simultaneous?   A curious question might arise whether separate purchasers of the shares respectively, would stand in the relation of partners, so as to enable the joint creditors to follow the goods.   It seems to me they would not, because not personally involved in payment of the debts.   Here, however, where the shares of the partners are united in the same purchaser, every semblance of partnership equities is at an end.   As regards the goods in the hands of the purchasers, this is conceded; but the joint creditors insist that the proceeds are to be substituted for the goods, and subjected to the same equities.   That might be done if the proceeds belonged to the partners; but it is not easy to imagine how they are to be treated as the owners of money raised by a sale on executions against them.   For what purpose should the ownership of it be vested in them, even for an instant?   Not to give the joint creditors a preference, for that would make the rights of the partners depend on the claims of the joint creditors, who on the contrary can claim nothing but by virtue of the lien, where there is one, of the partners.   To say that the partners have such a lien because the joint creditors have an equity, and that the joint creditors have an equity because the partners have a lien, would be to argue in a circle.   Here the partners cannot be prejudiced in respect of their claims on each other, the advantage to be gained from an application of the joint effects to their separate debts, being mutual and equal,   The consequences are precisely the same, as if the effects had been sold on an execution against both.  We are, therefore, of opinion that the joint creditors can not interpose; and consequently, that the rejection of the evidence, as well as the direction to the jury, was substantially right.

I have considered the question on principles applicable to it, in analogy to well settled parts of the law of partnership, rather than on authority bearing directly on the point. But, since this opinion was drawn, my brother Huston has directed my attention to the case of *Brinkerhoff* v. *Marvin,* 5 *Johns. Ch. R.* 300, which is direct to the point; so that independent of analogies, we have an authority on which we might safely rule the cause. But both principle and authority are adverse to the preference claimed; and the issue, therefore, was correctly found for the plaintiff.

Huston, J., dissented. .

Rogers, J., was sitting at Nisi Prius, and took no part in the judgment.

Judgment affirmed.