## Case No. 12,787.

### SHIMER v. HUBER et al.

[19 N. B. R. 414; 14 Phila. 402; 36 Leg. Int. 339; 8 Reporter, 393.] [1]

Circuit Court, E. D. Pennsylvania. Aug. 15, 1879.

PARTNERSHIP—TRANSFER TO CO-PARTNERS—CREDITORS—BANKRUPTCY—EXECUTION.

1. In a partnership the transfer by one partner of his interest to his co-partner, as against firm creditors, is a question of good faith. If the transaction is honest, for the purpose stated in the agreement, it does so transfer the interest as it purports to do, and the firm creditors having no lien on the property, or equity in respect thereto, independent of the partners, cannot complain

2. Executions issued on judgments, the warrants for which were signed and delivered a year before a petition in bankruptcy filed, are valid; and the hold on the property under them is good, unless the debtor actively interfered to have the seizures made.

On April 30, 1877, a petition on the part of firm creditors of the firm of Huber & Mohr was filed in the district court for the Eastern district of Pennsylvania, on which they were adjudged bankrupts. On April 24, 1877, three executions had been issued against C. Lewis Huber, one of the members of this firm, out of the court of common pleas of Lehigh county. One by Walter P. Huber, guardian of Chas. T. Ritter, for $2,000, dated April 14, 1874, and entered of record April 24, 1877; one by Rebecca Wagner, dated April 1, 1874, entered of record April 24, 1877, for $3,879; and one by Milton Cooper, dated December 7, 1875, entered of record April 24th, 1877, for $1,500. There was also another execution issued by the Coopersburg Savings Bank on April 28, 1877, on a judgment note dated March 29, 1877, and entered of record in the court of common pleas of Lehigh county, April 2, 1877. The last judgment was against C. Lewis Huber and Thomas Mohr. On April 30, 1877, this bill was filed, praying for an injunction against these execution creditors and against the sheriff of Lehigh county. The Coopersburg Savings Bank was brought in on a subpœna subsequently issued on application of the plaintiffs. Walter P. Huber is a brother, Mrs. Rebecca Wagner a sister, and Milton Cooper the father-in-law of C. Lewis Huber.

Before the formation of this partnership, C. Lewis Huber was in partnership with C. Wilson Dech and T. J. Kichline, trading in the firm name of Huber, Dech & Kichline. They carried on a boot and shoe factory at Allentown, Pa. About the 1st of June, 1876, the firm of Huber, Dech & Kichline was dissolved. The stock was then valued at about $20,000. Thomas Mohr, one of the bankrupts, then took a half interest in the business, and C. Lewis Huber the other half, and they entered into a co-partnership, trading in the firm name of Huber & Mohr. It

[1] [Reprinted from 19 N. B. R. 414, by permission. 8 Reporter, 393, contains only a partial report.]

appears that on the 29th of March, 1877, the firm of Huber & Mohr was dissolved. Mohr transferred his half interest to Huber, who assumed the firm liabilities. At the time of this dissolution the firm was practically insolvent, but the transaction was bona fide, and Huber then expected to. be able to carry it through, although he was also personally insolvent at the time, though this fact was not known to Mohr. Subsequently, being aware of his insolvent position, C. Lewis Huber intimated to certain of his private creditors that he proposed to make an assignment. As a result of such intimation, judgment notes, the warrants of which were signed and delivered a year prior to the petition in bankruptcy filed against Huber & Mohr, held by his brother, Walter Huber, his sister, Rebecca Wagner, and his father-in-law, Mr. Cooper, being all personal claims, were entered up, executions issued, and levy made upon the stock of the late firm within a month previous to the petition in bankruptcy filed by the firm creditors. The judgment to the Coopersburg Savings Bank had been confessed by the firm of Huber & Mohr prior to the dissolution, but no knowledge was shown on the part of the bank of the insolvency.

The case came up in the circuit court on a motion to restrain proceedings upon these four executions.

Winslow Wood and Jas. S. Biery, for complainants.

P. K. Erdman and R. E. Wright & Son, for respondent.

BUTLER, District Judge. Three questions are presented by this case: First, did the agreement of March 29, 1879, between the partners, Huber & Mohr, transfer the firm property to Huber as against the firm creditors? Second, were the seizures under the executions of Walter Huber, Mrs. Wagner, and Mr. Cooper, procured by the debtor, Lewis Huber? Third, is the judgment of the Coopersburg Savings Bank, of April, 1877, valid, and, if so, was the seizure under it procured by the debtor?

The first question is one of good faith, simply. If the transaction was honest—designed for the purpose stated in the agreement signed—it transferred Mohr's interest to Huber; and the firm creditors, having no lien on the property, or equity in respect thereto, independent of the partners, cannot complain. The insolvent condition of the firm at the time is unimportant, except as the fact may bear on the question of good faith. T. Pars. Partn. 502, note L; Lindl. Partn. *535; McNutt v. Strayhorn, 3 Wright [39 Pa. St.] 269; Doner v. Stauffer, 1 Pen. & W. 198; Baker's Appeal, 9 Harris [21 Pa. St.] 82; Walker v. Eyth, 1 Casey [25 Pa. St.] 216; Siegel v. Chidsey, 4 Casey [28 Pa. St.] 279; York Co. Bank's Appeal, 8 Casey [32 Pa. St.] 446; Cope's Appeal, 3 Wright [39 Pa. St.] 284; Vandike's Appeal, 7 P. F. Smith [57 Pa. St.] 9; Lefevre's Appeal, 19 P. F. Smith [69 Pa. St.] 122; Potter v. Hicks [Case No. 11,328], Cir. Ct. E. D. Pa. 1878. An examination of the evidence has satisfied us that the transaction was honest; that Mohr sold his interest to Huber in good faith for the consideration stated in the agreement. The firm was insolvent, according to the sense in which this term is used in the bankrupt law, we have no doubt; they could not meet their ordinary business obligations. But Huber, a hopeful, energetic, visionary man, believed his individual resources equal to all contingencies, and supposed he could prosecute the business successfully. In this opinion Mohr (who believed Huber had considerable separate property) fully concurred. Huber went to work earnestly, borrowed money, involving his father-in-law to a considerable amount; but the burden was too heavy, and very soon he sank under it.

Second, were the executions of Walter Huber, Mrs. Wagner, and Mr. Cooper, procured by the debtor, Lewis Huber? The judgments on which the executions issued having been entered in pursuance of warrants signed and delivered a year before the petition in bankruptcy was filed, are valid; and the hold on the property under them is good, unless the debtor actively interfered to have the seizures made. An examination of the evidence has satisfied us that he did so interfere. The burden of proof is on the plaintiff; and we approached the case with a natural inclination in favor of the execution creditors, whose judgments are not only honest, but for money loaned; but the testimony tending to show an arrangement that the debtor should interfere to save these creditors, if danger threatened, at the expense of others, is too strong to be disregarded. That he should be inclined to prefer them, may be presumed; they were his near relations; that he informed them of his condition, and that they, in consequence, and in a body, seized his property, is clearly proved. In the absence of repelling evidence, an inference that his motive in thus informing them was to induce the action they took, and that he did it in pursuance of an understanding, would be justified. But there is more in the case. Mr Deck, a creditor, testifies that Huber told him, when pressing for payment, months before, "that suing would do no good; that he had money of his brother, sister and father-in-law; that he would not leave them out in the cold." Mr. Wood, who called about a claim, as counsel, testifies that Huber told him substantially the same; "that his sister, brother and father-in-law, had judgments; that his creditors could gain nothing by pushing; that if they pushed he would have his relations sell him out; that they would use up the whole stock; that these debts were sacred, and he thought it his duty to protect them first." And Walter Huber, one of the execution creditors, says he would have entered his judgment earlier had it not been for

Lewis' statement that it would injure him, and a promise to tell him when danger approached. "I relied on this; that is the reason I did not enter it sooner; I entered it the next morning after he told me he was going to make an assignment." The business connected with these claims was attended to by Walter Huber and Mr. Cooper. They resolved to issue all the executions. immediately upon learning the debtor's condition, and did issue them. It is unimportant that Lewis may not have communicated directly with Mrs. Wagner. We cannot regard the denials of the parties to the transaction as a sufficient answer to this evidence.

Third, is the judgment of the Coopersburg Savings Bank valid. and, if so, was the execution which issued on it procured by the debtor? The warrant on which this judgment was confessed was signed within a month of filing the petition in bankruptcy. That the debtor was then "insolvent," as before remarked, cannot be doubted. Knowledge of this fact on his part, and an intention to prefer the bank in confessing the judgment, may, therefore, justly be inferred. But we fail to discover any evidence to warrant a conclusion that the bank had reasonable cause to believe him insolvent, or knowledge that his act was in fraud of the bankrupt law. without which the insolvency and improper motives of the debtor, are unimportant. Mere suspicion of insolvency or fraud will not answer. Grant v. National Bank, 97 U. S. 80. The officers say they believed him to be solvent, and the fact that they discounted his note at this time. supports their statement. The judgment must therefore be regarded as valid. And we find no evidence whatever that the debtor procured the execution which issued upon it. He had no motive to do so, such as existed in the other cases; and the testimony before referred to as applying there. is inapplicable here.

A decree will therefore be entered, enjoining and restraining Milton Cooper. Walter Huber, and Rebecca Wagner, their respective agents, servants and attorneys. from proceeding under their aforesaid executions against the property of C. Lewis Huber. seized as before mentioned, or in anywise interfering or intermeddling with the same. or the proceeds thereof, as prayed for. and dismissing the bill as respects the Coopersburg Savings Bank.